Chester C. KAMINSKI et al., Plaintiffs,

v.

SHAWMUT CREDIT UNION et al., Defendants.

Civ. A. No. 73–1873–C.

United States District Court,
D. Massachusetts.

June 30, 1980.

Frederic N. Halstrom, Robert T. Gill, Parker, Coulter, Daley & White, Boston, Mass., for plaintiffs.

Arthur E. Nicholson, Marnold Tagrin, Donald Cloutier, Boston, Mass., Joseph J. Machera, Revere, Mass., for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

This case arises from alleged violations of both federal and state truth in lending laws (both hereinafter referred to as TILA) 15 U.S.C. § 1601 *et seq.*, Regulation Z, 12 C.F.R. § 226.1 *et seq.*, Mass.Gen.Laws ch. 140C, and the Massachusetts Consumer Protection Law, Mass.Gen.Laws ch. 93A and Mass.Gen.Laws ch. 140C § 12. It is currently before the court on defendants' motion for a judgment of dismissal pursuant to Fed.R.Civ.P. 41(b). Defendants argue that upon the facts and the law, the plaintiff class has shown no right to relief, after a two day non-jury trial and the close of evidence on the issue of liability.

At the outset of the trial the court decided to go forward only on the issue of liability. At the end of the second day of trial both plaintiff and defendants had offered some evidence on the liability issue but the plaintiff's case remained open because one of its witnesses had been hospitalized. The trial was adjourned to be reconvened when plaintiffs' witness became available. Three days later on May 19, 1978 the plaintiff notified the court that it would rest on the issue of liability. At that time defendants moved pursuant to Fed.R.Civ.P. 41(b) for a judgment of dismissal.

In December 1978 the court declined to rule on the motion until the close of all the evidence. At a conference on January 11, 1980 the defendant informed the court that it would like to call one more witness on the liability issue. However that witness was unavailable and on January 17, 1980 the defendant offered the witness' deposition. The evidence now being closed as to liability, therefore the court will consider defendants' contention that upon the facts and the law the plaintiff class has shown no right to relief.

In July of 1972 plaintiff Kaminski negotiated a loan with defendant Shawmut Credit Union (Shawmut) and executed a promissory note in the amount of two thousand eight hundred dollars ($2,800.00). The instrument was a Form No. 61 *Promissory Note and Disclosure Statement* provided by the Credit Union League of Massachusetts to its member credit unions which included the Shawmut. The form had been approved by the Commissioner of Banks and was used in the loan transactions of all other members of the plaintiff class.

Although the projected term of the loan was one year, it was paid in full three months later when plaintiff inherited some money. Kaminski alleged that the promissory note evidencing his loan violated the TILA and that his claims were typical of the claims of a class consisting of "all present and former debtors of the defendant Shawmut who received on or subsequent to July 1, 1969 (the effective date of the TILA), a disclosure statement similar to [the disclosure statement received by Kaminski] wherein said disclosure statement did contain untrue statements of material fact and omitted to state material facts required to be stated therein or necessary to make the disclosure statement not misleading.

In August, 1974 the Commissioner of Banks certified to the Massachusetts Credit Union Insurance Corporation (MCUSIC) that the Shawmut was in unsafe condition. MCUSIC took possession and custody of the Shawmut and added two hundred thirty-nine thousand, two hundred and twenty-one dollars and eighty-one cents ($239,221.81) to its assets. It then transferred the assets and liabilities of Shawmut to Consumers Credit Union (CCU), formerly Noddle Island Credit Union [1] pursuant to Mass.Gen. Laws ch. 171 App. § 1–6. The affairs of Shawmut were finally liquidated on May 5, 1975. In 1975 plaintiff was allowed to file a substitute bill of complaint including MCUSIC and CCU as defendants. Plaintiff asserted that each of the three defendants was liable for Shawmut's TILA violations

---

1. At some point in time after August, 1974, the Noddle Island Credit Union became Consumers Credit Union. However the change was a change in name only. For purposes of this memorandum and to avoid confusion, that credit union will be referred to as "CCU" even as to those time periods before the name change.

because MCUSIC had statutory authority to defend any suit brought against Shawmut and that CCU assumed the liabilities of Shawmut when it purchased its assets.

This court in an unpublished order ruled that it had jurisdiction over the truth-in-lending act claims under 15 U.S.C.A. § 1640(e) and had pendent jurisdiction over the state consumer law claim' which plaintiff has brought pursuant to Mass.Gen. Laws ch. 140C, § 12 and Mass.Gen.Laws ch. 93A. *Kaminski v. Shawmut Credit Union*, No. 73–1873–C (September 16, 1975) (denying defendant's motion for summary judgment and defendants' motion to dismiss).

In July of 1976 this court certified this case as a class action. *Kaminski v. Shawmut Credit Union*, D.C., 416 F.Supp. 1119. The class consists of:

all customers of the Shawmut Credit Union who negotiated loans from the Shawmut Credit Union using the so-called "Form 61" from June 14, 1972 to date.

At that time the court also ruled that due to the interaction of federal and state TILA provisions, the defendant must comply with the requirements imposed by state law, Mass.Gen.Laws ch. 140C, but damages of the plaintiff class may be limited by federal law to five hundred thousand dollars ($500,-000.00) or 1% of the net worth of the creditor, whichever is less, 15 U.S.C. § 1640.

In addition, in an unpublished memorandum and order *Kaminski v. Shawmut Credit Union*, No. 73–1873–C (D. Ma. May 20, 1977) (order denying defendants' motion to dismiss) the court ruled that CCU had assumed the liabilities of the Shawmut when it purchased its assets and that MCUSIC, although not required by statute to assume the liabilities of the Shawmut, had contractually agreed to indemnify CCU.

Defendant now maintains that pursuant to Mass.Gen.Laws ch. 155 § 51 for purposes of defending any action filed before May 5, 1975 its corporate existence ended on May 8, 1978 three years after it was liquidated. It therefore claims that if this court rules that it violated the TILA in dealing with the plaintiff class while it was in existence, the plaintiff class may look only to CCU

and MCUSIC for its recovery. Section 51 provides:

Every corporation whose charter expires by its own limitation or is annulled by forfeiture or otherwise, or whose corporate existence for other purposes is terminated in any other manner, shall nevertheless be continued as a body corporate for three years after the time when it would have been so dissolved for the purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs, to dispose of and convey its property and to divide its capital stock, but not for the purpose of continuing the business for which it was established; provided, that the corporate existence of such a corporation, for the purposes of any suit brought by or against it within said period of three years, shall continue beyond said period for a further period of sixty days after final judgment in the suit.

The plaintiff class contends that the Shawmut has only been liquidated, that it has never been dissolved, and therefore that the provisions of Section 51 are not applicable.

The issues now before the court therefore are (1) whether defendant Shawmut may be required to continue to defend against this action along with CCU and MCUSIC, (2) whether defendant Shawmut violated the state and federal TILA and (3) whether the Shawmut violated the Massachusetts Consumer Protection Law.

## MAY THE SHAWMUT BE REQUIRED TO DEFEND AGAINST THIS ACTION

After consideration of the statutory framework governing Massachusetts credit unions and more specifically those credit unions which are members of MCUSIC I rule that the defendant Shawmut no longer exists for purposes of defending this action and that the plaintiff class must look to MCUSIC and CCU for any recovery it might seek. In so ruling however I do not adopt the argument asserted by the plain-

tiff class but rather on the statutory analysis herein set forth.

The first paragraph of Mass.Gen.Laws ch. 171 App. § 1–6 provides that upon a declaration from the Commissioner of Banks that it is inadvisable or inexpedient for any member of MCUSIC, to continue to transact the business for which it was organized without receiving financial or other assistance the MCUSIC, "notwithstanding any other provision of law may merge or consolidate such member or may facilitate the sale of assets of such member to and the assumption of its liabilities by one or more members."

In 1977 I ruled that the provisions of that paragraph operate to facilitate the continuity of the business of a credit union which has become incapable of transacting business. In so ruling I did not reach the issue of whether the Shawmut remained in existence after its assets and liabilities were transferred to CCU. *Kaminski v. Shawmut Credit Union*, 494 F.Supp. 723 (D. Ma.1977) (order denying defendants' motion to dismiss).

In the case at bar when MCUSIC transferred the assets and liabilities of Shawmut to CCU, the shareholders and members of Shawmut became shareholders and members of CCU. CCU accepted deposits, allowed withdrawals, and paid interest on Shawmut's share accounts. In addition CCU took over the Shawmut office. Mr. Chaisson, an employee of MCUSIC, testified that the two member credit unions "merged" and I so find. The only issue to be determined therefore is the legal effect of a merger on the liability of the parties to the merger.

Mass.Gen.Laws ch. 171 § 30 provides for the consolidation of two or more credit unions into a single corporation.[2] It provides in part:

> Upon the consolidation of two or more credit unions under the provisions of this section, the corporate existence of all but one of the consolidating credit unions shall be discontinued and consolidated into that of the remaining credit union which shall continue; and the charter of each other credit union shall become void.
>
> . . .
>
> A pending action or other judicial proceeding to which any of the consolidating credit unions is a party shall not be deemed to have abated or to have discontinued by reason of the consolidation, but may be prosecuted to final judgment, order or decree in the same manner as if the consolidation had not been made; or the continuing credit union may be substituted as a party to any such action or proceeding to which the consolidating credit union was a party, and any judgment, order or decree may be rendered for or against the continuing credit union that might have been rendered for or against such consolidating credit union if consolidation had not occurred.

■ Clearly therefore the existence of an otherwise defunct credit union does not continue for purposes of a pending law suit if the continuing credit union defends the action in its stead.

■ On May 20, 1977 I ruled that CCU had "assumed all of the liabilities contingent and otherwise of Shawmut". *Kaminski v. Shawmut Credit Union*, No. 73–1873–C (D. Ma. May 20, 1977) (order denying defendants' motion to dismiss). In light of that ruling and after consideration of Mass.Gen.Laws ch. 171 § 30 and Mass.Gen. Laws ch. 171 App. § 1–6 I now rule that the Shawmut has ceased to exist for the purpose of defending against this action and that any recovery which might have been available against the Shawmut is available against CCU.[3]

## TILA VIOLATIONS

The purpose of the required disclosures set forth in both the Federal and State

---

**2.** Although the statute uses the term "consolidation" and not "merger", it outlines the result of the consolidation as the continuation of one of the consolidating credit unions and not the formation of a wholly new credit union.

**3.** By its August, 1974 agreement with CCU, MCUSIC will indemnify CCU from any losses incurred as a result of this action.

TILA is to allow the consumer "to compare more readily the various credit terms available to him, and avoid the uninformed use of credit." 15 U.S.C.A. § 1601.

"Consumer credit" is defined in Mass. Gen.Laws ch. 140C § 1(j) as:

> Credit offered or extended to a natural person in which the money, property or service which is the subject of the transaction is primarily for personal, family, household or agricultural purposes on which either a finance charge is or may be imposed or which, pursuant to an agreement, is or may be payable in more than four installments. 'Consumer loan' is one type of consumer credit.

In a consumer credit transaction, the TILA requires a lender to make certain disclosures, prior to the extension of credit. To determine which specific disclosures must be made it is necessary to separate "open-end credit" and "other than open-end credit" transactions. Because Mr. Kaminski's note was a separate transaction and not a part of a plan whereby he was able to make purchases or obtain loans with the use of a credit card, check or other device, the extension of credit in the case at bar was "other than open-end credit." See Mass. Gen.Laws ch. 140C § 1(r).

The Kaminski note contained the following disclosures:

| | | |
|---|---|---|
| 1. Proceeds (Amt. Rec'd) . . . . . . . . . . . . . | $ | 476.00 |
| 2. Other Charges . . . . . . . . . . . . . . . . . . | | 2,072.00 |
| 3. Amount Financed . . . . . . . . . . . . . . . . | | 2,548.00 |
| 4. FINANCE CHARGE . . . . . . . . . . . . . . | | 252.00 |
| 5. Total of Payments . . . . . . . . . . . . . . . | | 2,800.00 |
| ANNUAL PERCENTAGE RATE . . . | | 18.77% |

Kaminski maintains: (1) Item No. 2 on the note (OTHER CHARGES) indicated the existence of other charges when in fact there were none; (2) the amounts included in OTHER CHARGES should have been itemized; (3) the amount set forth under OTHER CHARGES should instead be included in Item No. 4 (FINANCE CHARGE); (4) As a result of the foregoing the stated ANNUAL PERCENTAGE RATE was based on an incorrect FINANCE CHARGE and is materially lower than the true AN-NUAL PERCENTAGE RATE; (5) even if the ANNUAL PERCENTAGE RATE was not based on an incorrect FINANCE CHARGE, it was calculated according to the constant ratio method of accounting and not the actuarial method as required by law; (6) Kaminski and members of the class he represents were required to deposit 10% of the face amount of their loans in a share account with the Shawmut and that arrangement was not properly disclosed on Form 61; (7) The above mentioned omissions and misstatements were intentionally made; (8) Kaminski and members of the class never received passbooks for their share accounts and never received the amounts so deposited; (9) That the Shawmut's failure to account to Kaminski and members of the class for the proceeds of their share accounts was knowing and willful.

*Item No. 2—OTHER CHARGES*

It appears from the face of Kaminski's note that two thousand and seventy-two dollars ($2,072.00) of his two thousand eight hundred dollar ($2,800.00) loan went to the payment of OTHER CHARGES. This figure is comprised of a one dollar ($1.00) fee for credit union membership, two thousand and fifty dollars ($2,050.00) to be applied to the balance due on an earlier loan, and a twenty-one dollar ($21.00) charge for insurance. Plaintiff maintains that all of these charges should have been included under Item No. 4, FINANCE CHARGE and that the failure to disclose them as part of the FINANCE CHARGE resulted in an incorrectly stated ANNUAL PERCENTAGE RATE.[4]

Mass.Gen.Laws ch. 140C § 3(a) provides in part:

> (a) Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit . . .

---

4. The ANNUAL PERCENTAGE RATE is based on the stated FINANCE CHARGE.

Although Section 3(b) names charges which are exceptions to 3(a) when itemized, none of the three amounts contributing to the amount under OTHER CHARGES were itemized on the Kaminski note. Therefore, if any one of those charges is within the description set forth above it should have been included in the FINANCE CHARGE.[5]

■ I rule that the $2,050.00 loan repayment was clearly outside the terms of Section 3(a) and that it was properly excluded from the FINANCE CHARGE.

■ A membership fee may be imposed by a credit union pursuant to Mass.Gen. Laws ch. 171 § 7 as a prerequisite of credit union membership. I rule that it is not a charge which is incident to any single extension of credit and need not, therefore, be included in the FINANCE CHARGE.

However, as to the named plaintiff, the one dollar charge was improperly assessed. I find that at the time of Kaminski's loan, he was already a member to the credit union, and therefore, the $1.00 charge on his note was an error. Additional evidence established that such an error occurred on thirty-six promissory notes executed by members of the plaintiff class.

■ Mass.Gen.Laws ch. 140C § 3(a)(5) provides that charges and premiums for insurance are properly includable in the FINANCE CHARGE unless:

(i) the insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and (ii) any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

The face of Kaminski's promissory note bears the following disclosure in large type: CREDIT LIFE AND/OR DISABILITY INSURANCE IS NOT REQUIRED TO OBTAIN THIS LOAN.

I DESIRE CREDIT LIFE INSURANCE ONLY, AT A COST TO ME OF $21.00 FOR THE TERM OF THE CREDIT.

This disclosure and affirmative written indication of desire to purchase are separately signed and dated by Kaminski. However it has been conclusively established by pretrial admissions that every customer under seventy years of age who consummated a consumer credit transaction with the Shawmut Credit Union prior to the takeover by MCUSIC purchased credit life insurance. I find therefore that notwithstanding the declaration to the contrary, each borrower under seventy years of age was required to buy life insurance as a condition of the extension of credit.

I rule that the inclusion of the insurance charge under OTHER CHARGES and under AMOUNT FINANCED and the failure to include and itemize it under FINANCE CHARGE was a TILA violation. I further rule however that because the named plaintiff testified that he knew that he was buying insurance and would have purchased it even if it had not been required, he is bound by the declaration of desire to purchase which appears on the face of his note and which he signed. Thus as to the named plaintiff, the insurance premium was properly included in OTHER CHARGES.

*10% Required Deposit*

■ It is conclusively established by the admission of the Shawmut that in all loans consummated during the relevant period the customer was required to use 10% of the face amount of the note to purchase shares in the credit union unless he already had sufficient funds on deposit and that the credit union did not meet the disclosure requirements of the TILA as to that requirement.

Mass.Gen.Laws ch. 140C § 7(d)(1) requires the creditor to disclose the amount of credit which will be paid to a customer, including all charges, individually itemized which are not part of the finance charge under the

5. Although plaintiff maintains that the lender is required by law to itemize the amounts included in OTHER CHARGES, Massachusetts has been exempted from that requirement. There-fore if the amounts were properly included as OTHER CHARGES there was no need for them to be itemized.

heading AMOUNT FINANCED. However, any deposit balance which the creditor requires the customer to maintain in a specified proportion as a condition to the extension of credit should be excluded from the AMOUNT FINANCED and listed separately as a REQUIRED DEPOSIT BALANCE unless the account in question is:

(i) an escrow account . . . (ii) a deposit balance which will be wholly applied toward satisfaction of the customer's obligation in the transaction, (iii) a deposit balance or investment which was in existence prior to the extension of credit and which is offered by the customer as security for that extension of credit, (iv) a deposit balance which was acquired or established from the proceeds of an extension of credit made for that purpose upon written request of the customer.

Mass.Gen.Laws ch. 140C § 7(e)(2).

Form 61 was used in all loan transactions that are at issue here. There is no space of Form 61 for a REQUIRED DEPOSIT BALANCE or PREPAID FINANCE CHARGE to be listed separately. In addition there is no space on Form 61 for itemizing the charges included in the AMOUNT FINANCED. Thus the disclosure required by law in each case could not be made by using Form 61 without additional written disclosure. It is conclusively established by pretrial admissions that no additional written disclosure was made. Although the credit union provided the borrower with a passbook, that passbook contained no disclosures. I rule therefore that the use of Form 61 without any supplementary written disclosures violated the TILA. In so ruling I am mindful however that the mere failure to itemize or separately disclose a required deposit does not necessitate a finding at a later date that damage was suffered.

*Calculation of Interest*

■ It has been conclusively established by the Shawmut's responses to requests for admissions that in all loan transactions it calculated the interest figure by using the

*Annual Percentage Disclosure Table Massachusetts.* Mr. O'Dell testified that the tables in that book are based on the constant ratio method of accounting.

Mass.Gen.Laws ch. 140C § 4(b)(1) provides that the ANNUAL PERCENTAGE RATE in any extension of credit other than open end credit shall be determined as follows:

In accordance with the actuarial method of computation so that it may be disclosed with an accuracy at least to the nearest quarter of one per cent. The mathematical equation and technical instructions for determining the annual percentage rate in accordance with the requirements of this subsection *shall be those prepared by the board pursuant to the Federal Consumer Credit Protection Act and those promulgated by the Commissioner under this chapter.*[6]

However Section 4 further provides that the constant ratio method may be used (1) in an exceptional instance where a creditor cannot utilize the actuarial method; or (2) in cases where the charge is less than $5.00 and is applicable to an AMOUNT FINANCED of $75.00 or less, or (3) where the charge is less than $7.50 and is applicable to an AMOUNT FINANCED exceeding $75.00. Mass.Gen.Laws ch. 140C § 4(e).

Thus as to all loans at issue in this case which do not fall within the three narrow exceptions set forth above, the FINANCE CHARGE was improperly calculated.

*Intentional Violation of TILA*

■ In May, 1972 a letter was received by the Shawmut from Freyda Koplow, Commissioner of Banks in which all of the violations found herein were outlined. Thus the Shawmut was on notice before any of the notes relevant to this action were executed that TILA violations were being made. I find therefore that the violations of the TILA discussed above were intentional violations.

*93A Violations*

Plaintiff asserts that under Chapter 140C § 12 all violations of the TILA found by the

6. 15 U.S.C. § 1601.

court are automatically violations of 93A. Section 12 provides:

A violation of this chapter shall constitute a violation of Chapter ninety-three A.

However Mass.Gen.Laws ch. 93A § 9 requires that:

[A]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered shall be mailed or delivered to any prospective respondent.

■ In 1975 Mr. Kaminski did indeed send a demand letter to CCU, MCUSIC and the Shawmut. However the violations of the TILA which have been discussed herein were not mentioned in that letter. Rather it set forth Mr. Kaminski's claim that he had never received a passbook reflecting his share account nor had he ever received the proceeds of that account. Kaminski also set forth a claim that all other shareholders had received the same treatment and demanded an accounting of their share accounts. I rule that the claim under Chapter 93A is limited to the claim outlined in that letter and does not extend to the TILA violations discussed above.

■ In 1971, thirteen months before he executed the $2,800.00 note discussed herein, Mr. Kaminski had also executed a one year note for $5,000.00. At that time he was required to deposit $500.00 in a share account. On July 31, 1972 when Mr. Kaminski arranged for his new $2,800.00 loan the balance of $2,050.00 on the first note was overdue and Mr. Kaminski's share account had increased to $523.69.

The credit union records indicate that on that day Mr. Kaminski did not receive any of the loan proceeds in cash. $476.00 (substantially more than 10%) was deposited in a share account. The credit union records also indicate that although Mr. Kaminski closed his earlier share account of $523.69 on that day, the proceeds were paid to one Gabriel Asocker.

Mr. Kaminski testified that he received some money on that day and that he used it to pay personal bills. Although he testified that he had owed Gabriel Asocker a few hundred dollars, he remembered paying him in cash. At any rate on July 31, 1972 Mr. Kaminski understood that he had one loan and that some of its proceeds were used to pay the earlier loan off.

In October, 1972 the credit union records indicate that Mr. Kaminski prepaid the balance of his loan and a rebate of $126.00 was credited to his share account, bringing the balance to $602.00. The records show that Kaminski withdrew $256.00 and a copy of a check in that amount bearing his endorsement was introduced into evidence. Mr. Kaminski authenticated his signature but testified that although he signed the check he had no memory of receiving the money. (He later testified that he knew he didn't receive the money).

The credit union records show that in November, 1972, a dividend of $6.60 was added to the share account raising the balance to $352.60 and that on November 22, 1972 the account was closed with the issuance of check no. 2828 in that amount. Mr. Kaminski testified that he never received the proceeds of that check. A copy of the check which was introduced into evidence shows that it bears no Kaminski endorsement and is marked "for deposit only, Shawmut Credit Union."

Clearly therefore Kaminski's testimony and the credit union records consistently contradict one another. However the resulting discrepancies are not surprising in light of Mr. Kaminski's testimony that "As far as my memory goes I can't remember what I did yesterday". Mr. Kaminski continually contradicted himself, his testimony was unclear and fraught with lapses of memory. I rule that he has not sustained his burden of proof and has failed to persuade me that any violations of Chapter 93A have occurred.

Accordingly the motion to dismiss should be allowed as to the claims under Mass.Gen. Laws ch. 93A. The court stands ready to receive evidence as to damages in the

claims brought pursuant to 15 U.S.C.A. § 1601 et seq. and Mass.Gen.Laws ch. 140C.