UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SUSAN HICKS,

       *Plaintiff-Appellant,*

       v.

STAR IMPORTS, INCORPORATED,

       *Defendant & Third Party*
       *Plaintiff-Appellee,*

       v.

FIRST VIRGINIA BANK-PIEDMONT,

       *Third Party Defendant.*

No. 00-1891

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Norman K. Moon, District Judge.
(CA-99-33-6)

Argued: January 23, 2001

Decided: March 7, 2001

Before WIDENER and TRAXLER, Circuit Judges, and
Malcolm J. HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

---

Affirmed by unpublished opinion. Judge Howard wrote the majority
opinion, in which Judge Widener joined. Judge Traxler wrote a dis-
senting opinion.

---

## COUNSEL

**ARGUED:** Thomas Dean Domonoske, Harrisonburg, Virginia, for
Appellant. Joy Lee Price, CASKIE & FROST, P.C., Lynchburg, Vir-

ginia, for Appellee. **ON BRIEF:** Elmer R. Woodard, III, Danville, Virginia, for Appellant. James Frederick Watson, CASKIE & FROST, P.C., Lynchburg, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

HOWARD, District Judge:

Appellant Susan Hicks ("Hicks") appeals the order of the district court granting summary judgment to appellee Star Imports. We affirm.

### I.

On April 28, 1998, Susan Hicks purchased an automobile from Star Imports. To finance the purchase, plaintiff and appellee entered into a form-based Retail Installment Contract ("RISC"). Included in the amount financed column of the RISC was a charge for "Vendor's Single Interest Insurance" ("VSI"), along with the following clause:

> ***Vendor's Single Interest Insurance***: You are required to obtain this insurance. You may obtain this insurance from anyone of your choice that is acceptable to us. If you obtain this insurance from us, you will pay *$35.00*.

Hicks signed the RISC, and Star Imports included the $35.00 charge as part of the amount financed. Star Imports maintains that it assigned the RISC, along with the $35.00 VSI charge, to First Virginia Bank-Piedmont ("First Virginia" or "Bank"), who purchased VSI insurance covering Hicks's automobile.

On April 7, 1999, appellant filed suit in federal court alleging violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C.

§ 1601, and Virginia's Consumer Protection Act. Hicks's complaint alleged that Star Imports did not properly disclose the VSI charge as an element of the finance charge in violation of the TILA. Star Imports filed a third-party complaint against First Virginia. Hicks and Star Imports then filed cross-motions for summary judgment, and First Virginia filed a motion to dismiss the third-party complaint.

On June 9, 2000, United States District Court Judge Norman K. Moon of the Western District of Virginia granted Star Imports's motion for summary judgment on Hicks's TILA claim. After declining to exercise supplemental jurisdiction on Hicks's state law claim, the district court dismissed the third-party complaint against First Virginia as moot.

Appellant appeals the district court's summary judgment order. The standard for reviewing the district court's grant of summary judgment is *de novo*. *McGahren v. First Citizens Bank & Trust*, 111 F.3d 1159, 1165 (4th Cir. 1997).

## II.

Congress passed the TILA "to assure the meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a). The incorrect characterization of a charge in the amount-financed column under-reports the finance charge, and consequently lowers the annual percentage rate represented on a credit contract in violation of the TILA.

Single interest insurance for automobiles provides protection to a creditor if a debtor fails to secure insurance on his or her own. The TILA does not prohibit creditors from requiring borrowers to purchase single interest insurance. Instead, the TILA typically requires creditors to list single interest insurance as an element of the "finance charge." 15 U.S.C. § 1605(c). However, the statute provides an exception allowing single interest insurance to be designated as part of the "amount financed" if the creditor meets the following conditions: 1) the creditor provides a "clear and specific statement in writing . . . to the person to whom the credit is extended," 2) "setting forth the cost of the insurance if obtained from or through the creditor," and 3)

"stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained." *Id.*

The Federal Reserve Board, the agency charged with enforcing the statute, has promulgated regulations interpreting the statute, commonly known as Regulation Z. The regulations reiterate the statutory requirements, and further clarify that to include VSI in the amount financed column, the insurance must protect against property damage, not risk of default on the credit contract, and that the insurer must waive subrogation rights against the debtor. 12 C.F.R. § 226.4(d)(2) & n.5.

On appeal, Hicks asserts that the district court incorrectly concluded that the VSI fee offered by Star Imports was not mandatory. Despite signing a RISC which stated that the VSI fee was not mandatory, Hicks contends that her signature on the contract is not dispositive on the issue of whether she could purchase VSI insurance from an insurer of her choosing and seeks to introduce extrinsic evidence to prove otherwise.

We disagree and hold that the district court properly determined that the VSI fee was not mandatory. In determining whether extrinsic evidence is admissible to contradict the written terms of the contract, the Fifth Circuit in *Anthony v. Community Loan & Inv. Corp.*, 559 F.2d 1363 (5th Cir. 1977), held in the absence of fraud, duress, or illiteracy, the state parol evidence rule bars the introduction of evidence contradicting written disclosure requirements. *See also Dixon v. S & S Loan Serv.*, 754 F. Supp. 1567, 1571-72 (S.D. Ga. 1990); *Kramer v. Marine Midland Bank*, 559 F. Supp. 273, 284 (S.D.N.Y. 1983). The *Anthony* court reasoned that allowing parol evidence to contradict a signed disclosure statement would discourage consumers from reading the contract and availing themselves of the protections provided by the TILA. *Anthony*, 559 F.2d at 1363.

While Hicks urges that we adopt a substance over form approach looking beyond the express terms of the contract to determine compliance with the TILA, *see Kaminski v. Shawmut*, 494 F. Supp. 723, 729 (D. Mass. 1980), we decline to do so. Regulatory language interpreting the TILA states that "[t]he creditor need not ascertain whether the consumer is able to purchase the insurance from someone else," and

suggests that the TILA is concerned primarily with providing borrowers with *information* that they have the right to buy VSI from insurers of their choice, and not assuring that borrowers actually exercise the right. Second, the *Anthony* approach encourages consumers to take a pro-active approach to enforcing their federal rights and alleviates problems of proof. As seen in this case, the plaintiff signed the document without inquiring about the VSI insurance, but now claims that *if* she had tried to choose her own provider, the creditor would have refused. This type of claim, however, is based almost exclusively on speculations. We conclude that Hicks's signature on a document stating that Hicks could obtain insurance from an insurer of her choice met Star Imports's disclosure and voluntariness requirements under the TILA.

Finally, with respect to Hicks's claims that Star Imports's failure to produce the insurance policy should have precluded summary judgment, we conclude that the district court properly determined that Star Imports fulfilled its requirements under the TILA. Star Imports has always maintained that it passed the fee to First Virginia who purchased the policy. The TILA does not require Star Imports to oversee the purchase and terms of the VSI policy once Star Imports assigns the fee to a third-party.

*AFFIRMED*

TRAXLER, Circuit Judge, dissenting:

I do not believe that Star established its compliance with the requirements under the Truth in Lending Act ("TILA") for inclusion in the "amount financed" of the premium for vendor's single interest insurance ("VSI"). I therefore respectfully dissent.

TILA requires a creditor to make a correct disclosure of the amount of the finance charge that the consumer will pay over the life of the financing agreement, as well as the total amount financed under the agreement. *See* 15 U.S.C.A. §§ 1638(a)(2)(A), (a)(3) (West 1998). Under TILA, premiums for insurance against property loss or damage must be included in the finance charge

unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

15 U.S.C.A. § 1605(c) (West 1998). The district court concluded that Star sufficiently disclosed that Hicks could choose from whom she purchased the VSI insurance and the cost of the insurance if purchased through Star. Even if this conclusion is correct, it is not the end of the inquiry. TILA requires a creditor to *accurately* disclose the amount of the finance charge and the amount financed. *See, e.g.*, *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997) (explaining that TILA "requires disclosure — meaning . . . accurate disclosure"); *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475, 479 (5th Cir. 1995) ("Regulation Z [which implements TILA] sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate."). If a fee that the statute or regulations require be included in the finance charge is improperly included in the amount financed, then neither the finance charge nor the amount financed were accurately disclosed to the consumer. *See Adams v. Plaza Finance Co.*, 168 F.3d 932, 936 (7th Cir. 1999) ("Since [TILA] permits premiums for nonfiling insurance to be included in the amount financed but requires default insurance premiums to be included in the interest charge, a lender cannot be permitted to designate a premium as being for nonfiling insurance if it is really, clearly, and always for default insurance."); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 442 (5th Cir. 1998) (vacating grant of summary judgment to creditor because questions of fact existed as to whether insurance premium included in amount financed was in reality for non-filing insurance, which is not considered part of the finance charge, or was for general default insurance, which must be included as part of the finance charge).

Regulation Z explains that the property insurance referred to in section 1605(c) for which the premiums may be included in the amount financed encompasses single-interest insurance "if the insurer waives all right of subrogation against the consumer." 12 C.F.R.

§ 226.4(d)(2) n.5 (2000). As used in the regulations, single-interest insurance

> *refers only to the types of coverage traditionally included in the term vendors' single-interest insurance (or VSI), that is, protection of tangible property against normal property damage, concealment, confiscation, conversion, embezzlement, and skip.* Some comprehensive insurance policies may include a variety of additional coverages, such as repossession insurance and holder-in-due course insurance. These types of coverage do not constitute single-interest insurance for purposes of the regulation, and premiums for them *do not qualify for exclusion from the finance charge under § 226.4(d).* If a policy that is primarily VSI also provides coverages that are not VSI or other property insurance, a portion of the premiums must be allocated to the nonexcludable coverages and included in the finance charge. However, such allocation is not required if the total premium in fact attributable to all of the non-VSI coverages included in the policy is $1.00 or less (or $5.00 or less in the case of a multi-year policy).

12 C.F.R. Pt. 226, Supp. I, comment. 4(d), par. 10 (emphasis added).[1] The district court's ruling, however, makes no mention of these requirements for excluding a VSI premium from the finance charge. And from the record before us, I cannot conclude that, notwithstanding the district court's failure to consider all of the requirements for exclusion of the premium from the finance charge, summary judgment was properly granted to Star.

The only evidence in the record regarding the waiver of subrogation requirement and the traditional-risk coverage requirement is an affidavit from a First Virginia Bank officer explaining the nature of the VSI policy referred to in the installment sales contracts the bank purchased from Star. The affidavit, which was never mentioned by

---

[1]Although Star does not raise the issue, I note that TILA regulations and staff commentary are generally "dispositive" unless "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

the district court in its order, asserts that the VSI policy "waived any right of subrogation against the consumer" and that "[t]here was no coverage under the policy for pecuniary default by the consumer." J.A. 63. This affidavit was not served with Star's motion for summary judgment but instead was served the day before the summary judgment hearing.

To establish its entitlement to summary judgment, Star was required to demonstrate that it fully complied with TILA and regulation Z, including the requirement that single-interest insurance must waive all rights of subrogation and the traditional-risk-coverage requirement.[2] *See, e.g.*, *Wright v. Tower Loan of Miss., Inc.*, 679 F.2d 436, 444 (5th Cir. 1982) (explaining that the creditor bears the burden of proving compliance with TILA and regulation Z). The affidavit, therefore, should have been submitted at least ten days before the summary judgment hearing. *See* Fed. R. Civ. P. 56(c).[3] Assuming that the affidavit is otherwise sufficient to establish Star's compliance with TILA, I believe it would be improper to rely on it to affirm the grant of summary judgment given that Hicks had no opportunity to respond to the affidavit.

Moreover, even if the affidavit is properly viewed as part of Star's opposition to Hick's motion for summary judgment so that the affidavit was timely filed, *see* Fed. R. Civ. P. 56(c) (stating that opposing affidavits may be served "prior to the day of hearing"), I do not believe summary judgment is proper. The only way Hicks could confirm or refute the eleventh-hour affidavit's description of the terms of the VSI policy was through the policy itself. However, despite requests by Hicks during discovery, Star never provided Hicks with

---

[2]Although Star immediately assigned the installment contract in this case to First Virginia bank, Star is the creditor in the transaction for purposes of TILA. *See* 15 U.S.C.A. § 1602(f)(West 1998); 12 C.F.R. § 226.2(17) (2000). Thus, whether Star or the bank actually purchased the VSI policy, it was Star's responsibility as the creditor to comply with TILA's requirements.

[3]At the summary judgment hearing, Hicks objected to the affidavit on timeliness grounds, but the district court's ruling on the motion is not revealed in the joint appendix. As noted, however, the court did not mention the affidavit in its order.

a copy of the policy. While Star may not have had the policy in its possession, it certainly had access to the policy through First Virginia Bank, just as it had the ability to obtain the affidavit from the bank officer. In my view, it would be wholly inappropriate to grant Star summary judgment on the basis of a last minute affidavit apparently never considered by the district court when Star failed to provide Hicks with the only document that could refute the affidavit.

I would conclude that Star failed to establish its compliance with the relevant statutory and regulatory requirements and that Star, therefore, was not entitled to summary judgment. I would reverse the grant of summary judgment to Star and remand for further proceedings. Accordingly, I dissent.